Robert M. Carlson
CORETTE BLACK CARLSON & MICKELSON
129 West Park Street
P.O. Box 509
Butte, MT  59703
PH   :  406-782-5800
FAX  :  406-723-8919
bcarlson@cpklawmt.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | | |
|---|---|---|
| The Western Sugar Cooperative, | * | **Cause No. CV _____** |
| Plaintiff, | * | |
| v. | * | **COMPLAINT TO VACATE ARBITRATION AWARD** |
| International Brotherhood of Teamsters Local Union 190, | * | |
| Defendant. | * | |

Plaintiff, The Western Sugar Cooperative ("Western Sugar" or "Company"), files this Complaint to Vacate Arbitration Award against International Brotherhood of Teamsters Local Union 190 (the "Union").  Western Sugar states as follows:

## A.    The Parties

1.     Western Sugar is a grower-owned sugar beet processing company.  Its principal place of business is located at 7555 East Hampton Avenue, Denver,

**1 - COMPLAINT TO VACATE ARBITRATION AWARD**

Colorado 80231.  The Company operates a facility in Billings, Montana, where it plants, grows, and harvests beets, and then processes those beets into refined sugar.

**2.**     The Union is a labor organization within the meaning of Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185.  The Union has its principal offices at 437 Kuhlman Drive, Billings, Montana 59105.

**3.**     At all relevant times, the Union has been the exclusive bargaining agent for certain Western Sugar employees who work at Western Sugar's Billings facility.

**B.     Jurisdiction and Venue**

**4.**     This Court has subject matter jurisdiction over this case under 29 U.S.C. § 185 and 28 U.S.C. § 1331.  Western Sugar brings this action under § 185 and the Federal Arbitration Act, 9 U.S.C. §1 et seq., to vacate an arbitration award.  This matter thus arises under a federal law affecting interstate commerce.

**5.**     This Court has personal jurisdiction over the Union under the Montana Long-Arm Statute, Mont. R. Civ. P. 4(b), because the Union transacts business within the State of Montana.

**6.**     Venue is proper in the United States District Court for the District of Montana, Billings Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in Montana and in this district.  Moreover, the arbitration hearing that resulted in the

Award challenged here was held in Billings, Montana. Venue is therefore also proper in this Court pursuant to 9 U.S.C. § 10.

**C.    Facts**

7.    Western Sugar incorporates and realleges paragraphs 1 through 6 above as if fully set forth herein.

8.    Western Sugar and the Union entered into a collective bargaining agreement ("CBA") covering employees represented by the Union at Western Sugar's Billings facility. The CBA is effective June 1, 2013 through May 31, 2016. A true and accurate copy of the CBA is attached hereto as Ex. 1.

9.    The CBA provides that "[a]ll the functions, rights, powers and authority which the Company has not specifically abridged, delegated or modified by this Agreement are recognized by the Union as being retained by the Company." (Ex. 1, p. 13). The CBA thus vests the Company with authority and discretion over any matter that is not otherwise regulated by the contract. Id. This includes the Company's right to adjust and control employee headcount.

10.    As stated above, Western Sugar processes beet sugar at its Billings facility. The production process has two phases: campaign and intercampaign. Campaign begins in mid-September, when the beets have reached their peak sugar content, and runs until February. Intercampaign runs for the remainder of the year; from mid-February to September.

11. During campaign, Western Sugar harvests the beets and prepares them for production. Due to the volume of work, Western Sugar doubles its workforce at this time, in order to meet its business demands and customer needs. During intercampaign, Western Sugar performs maintenance on the mill, and ships out the sugar that was produced during campaign.

12. There are two categories of bargaining unit employees at the Billings facility: year-round and seasonal. The terms and conditions of employment of both year-round and seasonal employees are governed by the CBA.

13. Year-round employees are individuals who work at least 1680 hours by September 1 of each year. The only way an individual can become a year-round employee is by working 1680 hours in the particular timeframe.

14. The CBA sets forth various conditions that apply only to year-round employees.

15. Article 22, subsection F states that "[y]ear-round Employees with five (5) or more years of seniority shall be laid-off and/or recalled by seniority." Id. In addition, subsection G of Article 22 states that "[y]ear-round Employees with less than five (5) years of seniority shall be laid-off and/or recalled based on experience, skill ability, knowledge and training as applied to the Intercampaign work requirements and the protection of critical skills. Should the factors of experience, skill ability, knowledge and training be relatively equal, length of

continuous service shall prevail." Id.  These provisions place restrictions on the Company's ability to lay off year-round employees.

16. Seasonal employees are individuals who work less than 1680 hours by September 1 of each year.  The Company often hires seasonal employees to help accommodate increases in production demands.  When the workload decreases, the Company generally selects seasonal employees for layoff, in an effort to adjust headcount based on the needs of the facility and the volume of work.

17. Unlike year-round employees, Article 22 of the CBA is silent as to seasonal employees, and does not limit the Company's ability to lay off seasonal employees.

18. Greta Niles and Daniel Cass (collectively, "Grievants") are two Western Sugar employees represented by the Union.

19. Niles began working for Western Sugar in 2004.  She has never been a year-round employee.  Instead, Niles is a seasonal employee who has been laid off intermittently throughout her career with Western Sugar.

20. Niles was rehired on March 17, 2014 to work during intercampaign.

21. Cass began working for Western Sugar in December 2007.  Like Niles, Cass has never been a year-round employee, and had been laid off and rehired throughout his tenure with the Company.

22. Cass was rehired on March 13, 2014 to work during intercampaign.

5 - COMPLAINT TO VACATE ARBITRATION AWARD

23. During the 2014 intercampaign, Western Sugar monitored its seasonal employees' work hours, in order to determine whether they were approaching the 1680-hour year-round employee threshold. The Company discovered that Grievants were close to reaching 1680 hours.

24. The Company determined that it did not need Grievants' skills on a year-round basis. As a result, Western Sugar selected Grievants for layoff effective July 15, 2014.

25. The Union subsequently grieved the layoffs.

26. Pursuant to the terms of the CBA, the parties selected Arbitrator Frederick P. Kessler (the "Arbitrator") to determine the merits of the grievance.

27. The arbitration was held on May 21, 2015, in Billings, Montana. The parties were present and represented by counsel.

28. By a Decision and Award issued August 29, 2015 ("Award"), the Arbitrator ordered that the grievance be granted. A true and accurate copy of the Award is attached hereto as Ex. 2.

29. Notably, the Arbitrator did not find that Western Sugar violated a specific provision of the CBA. In fact, the Arbitrator rejected the Union's assertion that the layoffs violated past practice, and specifically held that contention was "not supported by evidence." (Ex. 2, p. 12). The Arbitrator further held that the Union's claims regarding past practice were inapplicable in light of

the "clear and unambiguous" contract language granting Western Sugar discretion in managing its business.  Id.

30. Despite these findings, the Arbitrator substituted his judgment for that of Western Sugar and awarded the Grievants "year-round status and the benefit resulting there from."  (Ex. 2, p. 13).  Notably, the Arbitrator did not describe or otherwise identify the "benefit" that he awarded.

31. The sole basis for the Arbitrator's award was his subjective opinion that "[t]he equities argue that [Grievants] should have been allowed to work enough additional hours to enable them to reach the year-round employment and have the benefits of status."  Id.  The Arbitrator further held that the Company's layoffs had "the effect of violating the **implied** covenant in every contract of good faith and fair dealing."  (Ex. 2, p. 13)(emphasis added).

32. The Arbitrator's decision does not draw its essence from the terms of the CBA, but rather serves as an impermissible attempt by the Arbitrator to "dispense his own brand of industrial justice," an action that cannot withstand judicial scrutiny and must be vacated.

33. In rendering this award, the Arbitrator ignored the unequivocal language of the CBA.

34. Article 18, subsection G) of the CBA states:  "The impartial arbitrator shall have no power to substitute his judgment for that of the Company and shall

have no power to overrule a decision of the Company unless the impartial arbitrator actually determines the Company has violated one or more of the **express** and **specific** terms, provisions or limitations of this Agreement." (Ex. 1, p. 16)(emphasis added).

35. The Arbitrator did not determine that the Company violated an express term, provision, or limitation of the CBA. To the contrary, the Arbitrary specifically held that the duty of good faith was "implied."

36. The Award is therefore improper.

37. By substituting the Company's judgment for his own judgment, the Arbitrator violated the express terms of the CBA.

38. Once the Arbitrator determined that the CBA's language was clear and unambiguous, his job was complete, and the grievance should have been denied.

39. By resting his decision on his belief that Western Sugar violated the implied covenant of good faith and fair dealing, without determining that Western Sugar violated a specific provision of the CBA, the Arbitrator ignored the language of the contract.

40. Because any or all of the actions described above constitute grounds for vacating an arbitration award, this Court should enter an award vacating the Arbitrator's determination, and directing that the underlying claim be denied.

**WHEREFORE**, Western Sugar respectfully prays as follows:

1. That this Court enter judgment finding that the Arbitrator exceeded his authority;

2. That this Court vacate the Arbitrator's Award sustaining the Union's grievances; and

3. For such further relief as the Court deems necessary and proper.

DATED this 20th day of November, 2015.

        By /s/ Robert M. Carlson
          CORETTE BLACK CARLSON
             & MICKELSON
      Attorneys for Plaintiff