# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| THE WESTERN SUGAR COOPERATIVE, | CV 15-119-BLG-CSO |
| Plaintiff, | **ORDER** |
| vs. | |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION 190, | |
| Defendant. | |

Plaintiff The Western Sugar Cooperative ("Western Sugar") brings this action against International Brotherhood of Teamsters Local Union 190 ("Union") to vacate an arbitration award.

Now pending are cross-motions for Summary Judgment. *ECF Nos. 20 and 23.*[1]  For the reasons discussed below, the Court will grant the Union's motion, and deny Western Sugar's motion.

## I.   BACKGROUND

Western Sugar and the Union entered into a collective bargaining

---

[1] "*ECF No.*" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*  References to page numbers are to those assigned by ECF.

agreement ("CBA"), which was effective June 1, 2013, through May 31, 2016. *ECF No. 15* at 2. The CBA created two category of employees, year-round employees, and seasonal employees. These categories were created because Western Sugar has two distinct seasons in its production schedule, "Campaign Season" and "Intercampaign Season". *ECF No. 1-3* at 3. During the Campaign Season, Western Sugar harvests and prepares beets for production. *ECF No. 15* at 3. These tasks require Western Sugar to double its workforce to meet its business demands. During the Intercampaign Season, Western Sugar has less work and then it performs maintenance on the mill and ships out the sugar produced during the campaign season.

The CBA creates two categories of employees based on the different needs of Western Sugar during the two seasons. "Year-round employees" are those employees who work at least 1680 hours within a twelve-month period ending September 1 of each year. An employee that fails to meet the requirements for a year-round employee is a "seasonal employee."

The Union represented two former Western Sugar employees, Greta Niles ("Niles") and Daniel Cass ("Cass"), at an arbitration

proceeding between Western Sugar and the Union.  The arbitration was held to determine the merits of grievances filed by the Union, which alleged the terminations of Niles and Cass violated the CBA.  While Niles and Cass were employed by Western Sugar, they were classified as seasonal employees, and had never attained year-round employee status.  Western Sugar terminated their employment when it calculated that they were close to attaining year-round employment status.

The arbitration was held on May 21, 2015, in Billings, Montana. On August 29, 2015, the arbitrator issued his decision granting grievance.  *ECF 1-2*.

## II.   <u>PARTIES' ARGUMENTS</u>

Western Sugar argues that the arbitrator was limited to hearing disputes based on the express and specific terms, provisions, or limitations in the CBA but that he did not make a determination within those limits in his award.  *ECF No. 21* at 7. It argues that the arbitrator instead determined the validity of the grievances based on the implied covenant of good faith and fair dealing.  *Id.*  It argues that the award was the "Arbitrator's blatant attempt to dispense his own brand of misplaced justice to fashion an Award he believed was fair, in clear

disregard of his authority under the CBA." *Id.* at 12–13.  Western Sugar argues that there is no provision in the CBA that limits its ability to lay off seasonal employees.  The only provision in the CBA that limits its authority to lay off employees is specific to year-round employees.

Western Sugar states that simply mentioning specific articles of the CBA does not satisfy the arbitrator's burden to find a violation of a specific provision of the CBA.  *ECF No. 28* at 2–3.  It argues that the Union does not show where in the decision the arbitrator found a violation of a specific provision of the CBA.  *Id.* at 3.

Finally, Western Sugar argues that because evidence of past practice cannot be used to establish terms of the CBA that are contrary to clear and unambiguous terms, the arbitrator effectively conceded that Western Sugar has the ability to control its workforce, and has an unambiguous right to layoff individuals to prevent them from attaining year-round status.  *Id.* at 6.  It argues that on this basis, because there is no provision in the CBA that limits its ability to lay off seasonal workers, the arbitrator's award should be vacated.  *Id.* at 7.

The Union responds that the CBA provides for final and binding arbitration over certain disputes. *ECF No. 25*. It argues that the arbitrator's award draws its essence from the CBA through an interpretation and application of its express terms. *Id.* at 6. It argues that the arbitrator relied on express provisions of the CBA, including Articles 2, 22, and 23, concluding that the bad faith interpretation of those Articles would render them meaningless and that the implied covenant of good faith and fair dealing breathes life into these express provisions of the CBA. *Id.* at 6–9.

In response to Western Sugar's argument, the Union states that: (1) the decision drew its essence from the express terms of the CBA; (2) the reasoning of the arbitrator was supported by the undisputed testimony of a witness that testified at the hearing; (3) Western Sugar's interpretation of its management duties would render Articles 2, 22, and 23 meaningless; and (4) the decision is "replete with references to provisions of the [CBA] which are violated and rendered meaningless as a result of such a bad faith interpretation." *ECF No. 30* at 4–13.

## III.   LEGAL STANDARD

The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, discovery responses, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Cross-motions for summary judgment are each examined under the same standards. *Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001).

## IV.  <u>ANALYSIS</u>

Courts must "afford a 'nearly unparalleled degree of deference' to the arbitrator's decision" when reviewing labor arbitration awards. *S.W. Regl. Council of Carpenters v. Drywall Dynamics, Inc.*, 2016 WL 2909241, at \*3 (9th Cir. May 19, 2016) ("*Drywall Dynamics*") (*quoting Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173, Intern. Ass'n of Machinists and Aerospace Workers*, 886 F.2d 1200, 1205 (9th Cir. 1989)).  The Court's "task is to determine *whether* the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly*.*" *Hawaii Teamsters and Allied Workers Union, Loc. 996 v. United Parcel Serv.*, 241 F.3d 1177, 1178 (9th Cir. 2001) (emphasis in original).  Essentially, the Court only reviews "the procedural soundness of the arbitral decision, not its substantive merit." *Id.* at 1181.  If an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *S. California Gas Co. v. Util. Workers Union of Am., Loc. 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (internal quotations omitted).  "[A]n arbitrator's interpretation of the scope of the

issue submitted to him is entitled to the same deference accorded his interpretation of the collective bargaining agreement." *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989).

The degree of deference given to arbitration awards is based on the unique role arbitration plays in the labor context. *Federated Dept. Stores v. United Foods & Com. Workers Union, Loc. 1442*, 901 F.2d 1494, 1496 (9th Cir. 1990). The Supreme Court's *Steelworkers Trilogy* opinions emphasize this unique role. *See United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960). The Court explained that the grievance procedure is a part of the continuing collective bargaining process and "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Enterprise Wheel & Car Corp.,* 363 U.S. at 596. Arbitration in the labor context is more than a mechanism for resolving disputes, it "is actually a vehicle by which meaning and content are given to the collective bargaining agreement." *Warrior & Gulf Navigation Co.,* 363 U.S. at 581. As demonstrated by

these principles, "[d]eference is the rule; rare indeed is the exception."

*Stead Motors*, 886 F.2d at 1209.

But there are exceptions.  Generally, the Ninth Circuit has

recognized four circumstances that may justify vacatur of a labor

arbitration award:

> (1) when the award does not draw its essence from the
> collective bargaining agreement and the arbitrator is
> dispensing his own brand of industrial justice; (2) where the
> arbitrator exceeds the boundaries of the issues submitted to
> him; (3) when the award is contrary to public policy; or (4)
> when the award is procured by fraud.

*Drywall Dynamics*, 2016 WL at *4 (quoting *S. California Gas Co.*, 265

F.3d at 792–793).  Western Sugar here argues that the first

circumstance applies – that the arbitrator's award does not draw its

essence from the CBA and the arbitrator was dispensing his own brand

of industrial justice.

A court may vacate an arbitration award if the arbitrator strays

from interpretation and application of the CBA and effectively

dispenses his own brand of industrial justice.  *Major League Baseball

Players Ass'n v. Garvey*, 121 S. Ct. 1724, 1728 (2001) (*per curiam*).  But

an arbitrator may look for guidance from many sources as long as the

award "draws its essence from the collective bargaining agreement."

*Enterprise Wheel & Car Corp.*, 363 U.S. at 597. Additionally, a court may not "infer the non-existence of a particular reason merely from the award's silence on a given issue." *Drywall Dynamics*, 2016 WL at *7 (quoting *Stead Motors*, 886 F.2d at 1213). Labor arbitrators are not required "to make the sorts of explicit or exhaustive 'findings of fact' we demand of district courts" and "the reasons for arbitral rulings need not be spelled out in detail." *Id.* Accordingly, a court cannot fault an arbitrator for "improvident, even silly, fact finding." *Id.*

Here, the arbitrator's award first sets forth the CBA provisions at issue, including Article 2 (Definitions), Article 16 (Rights of Management), Article 22 (Intercampaign Crew Selection), and Article 23 (Hiring Former Campaign Employees). The award also outlines the positions of each of the parties, as well as portions of the testimony from the hearing. *ECF No. 1-2.* The arbitrator then analyzed the facts in light of the CBA, leading to the conclusion:

> The actions of the Company to layoff Niles and Cass prior to their achieving the 1680 hours of work specifically for the only purpose of making them ineligible to become year-round employees has the effect of violating the implied covenant in every contract of good faith and fair dealing.
>
> If this practice is upheld, it makes meaningless the provisions of the Labor Agreement, which describes the

process, which the parties agreed, an employee could attain
year-found [sic] status. Arbitration cannot sanction an
interpretation which makes a provision meaningless. Such
an interpretation destroys or injures the right of the other
party to receive the fruits of the contract.

*Id.* at 13.

The arbitrator thus provided reasoning to support his ultimate

conclusion.  He noted that when "a clear and unambiguous provision

exists in a labor agreement, arbitrators generally refuse to consider

evidence that is inconsistent with the language of the agreement." *Id.*

at 12.  Although Western Sugar argues the award is invalid because the

arbitrator considered the covenant of good faith and fair dealing, the

Court's task is only to determine whether the arbitrator interpreted the

CBA—not to determine whether he erred in his conclusion. *See S.*

*California Gas Co.*, 265 F.3d at 792.  It appears from the record that the

arbitrator did arguably construe and apply the provisions of the CBA to

make his decision.  In fact, it appears that he reached his conclusion

because he thought the conclusion was necessary to give meaning to the

provisions of the CBA that described the process by which an employee

could attain year-round status.

The Court cannot conclude from this that the arbitrator was

enforcing his own brand of industrial justice, with regard to the CBA.  It appears he read the CBA, considered the CBA's express provisions, and then made a decision regarding the grievances before him, based on his interpretation of the CBA.  He did not stray from an application of the agreement and the decision draws its essence from the CBA.  Courts "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."  *Enterprise Wheel & Car Corp.*, 363 U.S. at 568.

This Court may not evaluate the arbitrator's interpretation of the CBA to determine whether it meets a judicial standard of acceptability as a construction of the contract.  Rather, "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Drywall Dynamics, 2016 WL at \*5* (*quoting United Paperworkers Int'l Union, AFL-CIO v. Misco,* 484 U.S. 29, 38 (1987)).

It is true that the CBA does place limits on the scope of the arbitrator's authority.  The CBA indicates that the arbitrator "shall

have no power to overrule a decision of the Company unless the

impartial arbitrator actually determines the Company has violated one

or more of the express and specific terms, provisions or limitations of

this Agreement." *ECF No. 1-3* at 16.  It also states:

> The impartial arbitrator shall have no power to render a
> decision on any matter not specifically covered by the terms,
> provisions or limitations of the Agreement; to render a
> declaratory judgment; or to add to, subtract from, or modify
> any of the terms, provisions or limitations of this
> Agreement[.]

*Id.*

Neither party disputes, however, that the subject matter of the

grievance was properly before the arbitrator, or that he had the

authority to render a decision on the grievance.  Instead, Western Sugar

disputes the reasoning upon which the grievance was decided.  This is,

in essence, not a question of whether the arbitrator exceeded his

boundaries but whether he correctly interpreted the CBA.

Western Sugar argues that there is no express provision in the

CBA that could have supported the result found by the arbitrator and

provides excerpts of testimony from the arbitration in support of its

argument.  But so far as the arbitrator's decision concerns construction

of the contract, "the courts have no business overruling him because

their interpretation of the contract is different from his." *Enterprise Wheel & Car Corp.*, 363 U.S. at 599.

Here, the grievance was subject to arbitration and was properly submitted to the arbitrator. The arbitrator did look beyond the express provisions in order to interpret, and give meaning to, the CBA. But the Court finds that the arbitrator's consideration of implied terms does not require vacating the award.[2] The arbitrator serves as the parties' surrogate, and as such, cannot "misinterpret" a CBA as long as he is

---

[2] Even where a CBA limits what an arbitrator may base his decision on, courts have held that the interpretation of that limitation should be left to the arbitrator—and an arbitrator is not necessarily limited to considering only express terms because rendering a decision requires the arbitrator to give meaning to those terms. *See SFIC Properties, Inc. v. Intl. Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Loc. Lodge 311*, 103 F.3d 923, 926 (9th Cir. 1996) (finding that an arbitrator can infer a just cause requirement into a CBA to give meaning to the provisions because the arbitrator's consideration of industrial common law is "equally a part of the [CBA] although not expressed in it."); *Laborers Intern. Union Loc. 252 v. Town Concrete Pipe of Washington, Inc.*, 680 F.2d 1284, 1285 (9th Cir. 1982) (finding that a savings clause restricting what an arbitrator may decide was a substantive provision, and interpretation of the provision should be left to the arbitrator). *See also Chauffeurs, Teamsters and Helpers Loc. Union No. 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716, 719 (8th Cir. 1980) (upholding an arbitrator's decision that inferred a just cause requirement where the CBA limited the arbitrator to considering only the express terms of the CBA).

arguably construing and applying the CBA and acting within the scope of his authority.  *Stead Motors*, 886 F.2d at 1205.

## V.   <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED that Plaintiff's Motion for Summary Judgment (*ECF No. 20*) is DENIED and Defendant's Motion for Summary Judgment (*ECF No. 23*) is GRANTED.

The Clerk of Court shall enter Judgment accordingly, and close this file.

DATED this 16th day of June, 2016.

/s/ Carolyn S. Ostby
United States Magistrate Judge